UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT LOPEZ AND OLGA LOPEZ, | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | *   Civil Action No. 14-cv-11944-MGM |
| U.S. BANK NATIONAL ASSOCIATION, | * |
| AS TRUSTEE UNDER POOLING AND | * |
| SERVICING AGREEMENT DATED AS | * |
| OF JUNE 1, 2004 AMONG CITIGROUP | * |
| MORTGAGE LOAN TRUST INC., | * |
| NATIONAL CITY MORTGAGE CO. | * |
| AND U.S. BANK NATIONAL | * |
| ASSOCIATION, | * |
| Defendant. | * |

MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO REMAND
(Dkt. No. 9)
September 30, 2014

MASTROIANNI, U.S.D.J.

Before the court is Plaintiffs' *Motion to Remand Case to State Court*. (Dkt. No. 9.) On September 24, 2014, the court held a hearing on Plaintiffs' motion. Because this court lacks jurisdiction, Plaintiff's Motion is ALLOWED.

I. BACKGROUND

Plaintiffs, Olga Lopez and her adult son Robert Lopez, have lived at 63 Wilcox Street in Springfield (the "Property") for approximately 6 years. Defendant purchased the Property at a

foreclosure sale on September 12, 2011 and became Plaintiffs' landlord. Under Massachusetts law, residential landlords are required to furnish premises that meet certain requirement. See e.g. Haddad v. Gonzalez, 410 Mass. 855 (1991). Plaintiffs assert that since Defendant became their landlord, conditions that do not meet legal requirements have existed at the property. In September 2013, Plaintiffs sent a formal demand letter to Defendant pursuant to Mass. Gen. Laws ch. 93A, § 9, noting specific problems at the Property and requesting relief from Defendant. In their 93A demand letter, Plaintiffs expressed a desire to retain possession of their apartment, requested Defendant make the repairs necessary to remediate the illegal conditions, and asserted that the value of their claims could be as much as $6,750 for rent abatement and $30,000 for emotional distress.

Defendant subsequently denied having any liability and Plaintiffs filed this case in the Commonwealth of Massachusetts Housing Court, Western Division ("Housing Court") on March 18, 2014.

In their Housing Court complaint, Plaintiffs sought an unspecified amount of damages, but made no claim for possession. Defendant removed the case to this court on April 28, 2014, arguing that this court had jurisdiction pursuant to 28 U.S.C. § 1441(b). Plaintiffs have filed their *Motion to Remand*, (Dkt. No. 9), arguing that their damages will not exceed $75,000 and, as a result, this court must remand because it lacks jurisdiction.

II. STANDARD

When a defendant removes a case from state to federal court, the defendant must "make a 'colorable' showing that a basis for federal jurisdiction exists." Danca v. Private Health Care Systems, Inc., 185 F.3d 1, 4 (lst Cir. 1999). As the party invoking federal jurisdiction, Defendant "has the burden of establishing that the court has subject matter jurisdiction over the case." Amoche v. Guar. Trust Life Ins. Co., 556 F.3d 41, 48 (1st Cir. 2009). If a case is removed based on diversity

jurisdiction and the complaint does not state the amount of the claims, "the party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." Spielman v. Genzyme Corp., 251 F.3d 1, 5 (1st Cir. 2001)(quoting Dep't of Recreation and Sports v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991)). As a general rule, deference is given to a plaintiff's choice of forum. Mindful of this, the First Circuit has determined that it is appropriate to impose on a defendant seeking removal a higher burden of proof to establish the amount in controversy than is imposed on a plaintiff seeking to litigate in federal court. Amoche, 556 F.3d at 49. In the First Circuit, the burden on the defendant is best described as a "reasonable probability."[1]

A court assessing whether a removing defendant has met its burden to show that there is a "reasonable probability" that the amount in controversy meets the threshold amount must look at the scope of the controversy at the time of removal. Events after the removal that increase or decrease the amount in controversy do not endow or divest the federal court's jurisdiction. Id. The First Circuit has ruled that a federal court must examine relevant state law to determine the nature and extent of the damages which may be awarded in a suit. See Stewart v. Tupperware Corp., 356 F.3d 335, 339 (1st Cir.2004). When an applicable state statute provides attorneys fees, reasonable estimates of those fees are included as part of the amount in controversy. Spielman v. Genzyme Corp., 251 F.3d 1, 7 (1st Cir. 2001); see also Youtsey v. Avibank Mfg., 734 F. Supp.2d 230, 238 (D.

---

[1] In Amoche, the First Circuit determined that the appropriate burden of proof to impose upon the removing party was "reasonable probability" rather than "preponderance of the evidence," when removal was pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of title 28). The First Circuit has yet to clarify whether its analysis in Amoche is limited to CAFA cases or applies to all removals involving jurisdictional amount. Milford-Bennington R. Co., Inc. v. Pan Am Rys., Inc., 695 F.3d 175, 179 (1st Cir. 2012) (noting that the court had not decided the burden for a party removing a case to which CAFA did not apply). Notwithstanding the First Circuit's caution in Milford-Bennington, this court is persuaded that the Amoche analysis is applicable beyond the context of CAFA for two reasons. First, the First Circuit's analysis in Amoche did not address considerations unique to cases brought under CAFA and the court favorably cited cases not involving CAFA. Second, the First Circuit stated that "the reasonable probability standard is, to our minds, for all practical purposes identical to the preponderance standard," suggesting that it would have no reason to distinguish between the two standards in another case. Amoche, 556 F.3d at 50.

Mass. 2010). Following the same reasoning, though the First Circuit has not yet had occasion to do so, when double or treble damages are permitted pursuant to state statute, the district court should consider the multiplied amount when determining the amount in controversy in a case. See Evans v. yum Brands, Inc., 326 F.Supp.2d 214, 222 (D.N.H. 2004)(citing the reasoning of the Fifth, Ninth, and Eleventh Circuits). Although federal courts must look to state law to determine the nature and extent of the damages allowed under state law, it is error for the court to base its determination of the value of the case on an estimate of what a state court or jury would actually award, were the case to proceed to trial in state court. Stewart, 356 F.3d at 339.

III. DISCUSSION

Defendant has proposed that the amount in controversy in this case be calculated by taking the amount set forth by Plaintiffs in their 93A demand letter, $36,750 and either (1) adding to it the assessed value of the Property, $48,000, or (2) trebling the amount. Unsurprisingly, each of these methods results in a figure greater than $75,000. Having considered the submissions and arguments of the parties, the court is not persuaded that either of Defendant's proposals meets its burden of establishing by a reasonable probability that the jurisdictional amount is met in this case.

With respect to Defendant's first proposal, there is simply no basis for including the assessed value of the Property in calculating the amount in controversy. Defendant suggests that it is appropriate to include the value of the Property because Plaintiffs stated in their 93A demand letter that they would not agree to give up possession of the property. As Plaintiffs did not renew that position in their complaint, there is no basis for considering the value of such a claim, whatever it may be, as part of the amount in controversy as of the date of removal.

Alternatively, Defendant suggests that the amount in controversy is three times the amount of damages Plaintiffs' sought in their 93A demand letter. Under Massachusetts law, if Plaintiffs

4

succeed on their 93A claim, they may be awarded treble damages. Mass. Gen. Laws ch. 93A, § 9; see also Evans, 326 F. Supp. 2d. at 222. Though the court can properly consider a trebled amount, the Defendant still bears the burden of establishing the amount of damages, prior to trebling, is more than speculative.

The damages claimed by Plaintiffs in their 93A demand letter fell into two categories, rent abatement, $6,750, and emotional distress, $30,000. Plaintiffs' calculation of rent abatement, as explained in their 93A demand letter, was based on the amount of rent, the scope of alleged violations, and the period of time during which Plaintiffs endured the violations. As Plaintiffs based their calculation of this portion of damages on the amount of rent that was due over a specific period of months, the court concludes that Defendant meets its burden with respect to this amount.[2] The same cannot be said with respect to the much larger portion of Plaintiffs' demand attributable to emotional distress. Plaintiffs did not provide any factual basis for their valuation of their emotional distress damages beyond the guess of their attorney, and Defendant cannot meet its burden by relying on the musings of Plaintiffs' counsel. C.f. Youtsey, 734 F. Supp. 2d. at 238 (ruling that the parties' unsupported estimates of attorneys fees were too speculative to establish an amount in controversy in excess of the jurisdictional threshold). This is especially true given that Plaintiffs' assessment was chosen as the amount from which to start settlement negotiations, not as an estimate of the true value of their claim. The posturing of attorneys at an early stage of litigation is far from being considered realistically specific but does define speculative.[3]

Having found that there is an insufficient basis to consider either the $48,000 assessed value of the Property or the $30,000 emotional distress damage estimate in computing the amount in

---

[2] As of the date of the 93A demand letter, Plaintiffs sought a rent abatement of 60% of the amount of rent, $450, over a period of 25 months. As of the date of removal, by the court's own calculations, it appears that Plaintiffs had occupied the apartment for 32 months. Extending Plaintiffs' calculations through these additional months increases the amount of abatement to $8,640. The court also notes that even a 100% abatement over 32 months would be just $14,400.
[3] At the hearing, neither party could provide any detail to support a contention that the 93A demand was anything but speculation aimed at inducing a negotiation process.

5

controversy, the court is left with an estimate of rent abatement damages that, even trebled, falls far short of the $75,000 threshold that Defendant must cross before this court has jurisdiction over this case.

IV. Conclusion

For the Foregoing reasons, Plaintiffs' motion for remand is hereby ALLOWED.

It is So Ordered.

    /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge